The President We have a number of students that have left, so if you're crowded over here and you want more room, please feel free to move over to the other side. If you want to be really neighborly, just stay right where you are. We've divided the time ten and ten. Are you each going to want rebuttal time, or how do you want to work this? Yes, Your Honor. How much do you want each? One minute each. One minute each, okay. All right. And will you help me on this? Do we refer to Mr. Asano or Mr. Matsuda, which is correct? Mr. Asano. Asano, okay. Very good. Okay. Please proceed, counsel. May it please the Court. My name is Harold Print representing Ravi Singh in this appeal. And the prosecution in this case rested on the premise that my client willfully aided a foreign national in making a political contribution. But the trial court refused to instruct the jury that it must find that Singh that knew that Asano was a foreign national before it convicts. This is a basic material element of the offense, but for this knowledge, there would not have been an offense. And for whatever reason, the prosecution opposed this instruction, and the court agreed and did not give it. If this is error, is it structural? It's clear error, Your Honor, because the Supreme Court has said from time to time that leaving out an element of the offense isn't structural error if the — if that element isn't really contested and if the evidence is not. Well, his — oh, it was very much contested, Your Honor. So you — there was a contest in this case? Absolutely. And in fact, there were a number of people who testified that they thought also that Asano was a citizen or at least had a green card, including his good friend Mark Chase, including the sheriff, including Mayor Bonnie Dumanis. I guess I've asked the question incorrectly, or you're a better lawyer than me. Did your client claim that he didn't know that Mr. Asano was a — Well, my client did not testify, Your Honor, at the case, so I can't, you know, speak to that. But that was the theory of the case. Okay. Fair enough. Absolutely. And this Court has held many times that a failure to instruct on a material  Well, let me ask you this, counsel. As I understand it, both sides presented argument and evidence regarding the issue of whether your client knew that Mr. Asano was a U.S. citizen. It went back and forth, lots of it went back and forth. So if there was error, to get to my colleague's point, was this harmless error? In other words, what damage was done for a failure to have a jury instruction on that point? Clearly, there was error, Your Honor, prejudicial error, because that was the contested issue in the case, one of the significant ones, right? And so if my — if the jury was not focused on the fact that they had to find that the — my client knew that Asano was a foreign national, then they wouldn't have had to make that determination. And let me just read the instruction that the jury gave. The jury said that — that instruction required that Singh act with knowledge and intention of helping Asano commit the crime. Well, you don't have to know that he's a foreign national to know that he helped Asano allegedly commit the crime. But instruction where you're reading from? That was instruction, I believe, was 26 in the record. So I think that's clear. But then the jury was also — I'm going to combine that with the instruction given on Asano. The instruction given — just — I know what you're — let me ask the question and you can give me the answer. But if you give me the answer first, it may not be the right one. The jury was instructed on Asano that a foreign national making contributions was illegal. And on your client, they were instructed that the evidence must show that Singh acted with the knowledge and intention of helping him to commit the crime. Does that — do those two instructions taken together tell the jury that they must find that he was a foreign — I don't think it's close enough, Your Honor. — that he knew was a foreign national? I don't think it's close enough because it says that he has to help him commit the crime. It doesn't say there's an added material element of the offense that must be found beyond a reasonable doubt by the jury. That's the focus on the function of jury instructions, to make sure that the jury can isolate what findings it needs to make in order to satisfy the material elements of the crime. Which count does this — or counts does the judgment give? This is just with respect to the foreign contribution count, but it spills over. Does it count three? I don't remember which count it was in the — but the point I'm also making is that it spills over. Does it — that's the next question that I was going to ask. So the other counts are, in effect, causing somebody to file a false election return — a false return. And a conspiracy, Your Honor. Right. As to — even if Mr. Ezzano was not a foreign national, misrepresenting to the campaign, I think on the first of the two ones, that I'm a volunteer would have led to the filing of a false return, would it not? It would have led to an incorrect filing of a local election law. Right. Right. It would not have been within the jurisdiction of the United States. Put aside your jurisdiction argument for a second. It would have led to the filing of a false return. It's arguable, Your Honor. Yes. And as to the second one, I think you've got a better defense. But as to the first one, he misrepresented to the campaign that he was a volunteer. That's arguable. I mean, it was not — it was not suggested to the jury. But there was evidence that he did. There was some evidence. Okay. Sufficient evidence for a jury to conclude that? Well, the jury wasn't instructed about that, if that's — I know. But — but if he misrepresented to the campaign that he was a volunteer, then they filed a return not reflecting the contributions that he made. It wasn't charged, Your Honor, of course. And — but in addition, that would never have risen to the level of an investigation within the jurisdiction of the United States. So it's clear that the 1519 counts, which should be discharged, removed for many other reasons. See, I'm not so sure about that, because if he had reported correctly that the contribution was being made by Mr. — I want to get it right. Azzano. Azzano. Mr. Azzano, then there would — the FBI would have had information from which it could have done its investigation. So whether or not he — whether or not he knew Mr. Azzano was an alien isn't the point. He led them to file a false return that would have been within the jurisdiction of the FBI to investigate. This is all hypothetical, Your Honor, because he wasn't charged — the jury was never instructed about the question of volunteering. No, he was charged with causing them to, in effect, file a false return. Right. But he wasn't charged with the excessive volunteering, and he wasn't charged with — But that was the theory of them causing him to file the false return, that you didn't disclose that — that you're — you're — these weren't pro bono activities. They were being paid for, I assume. Well, the easier assessment there is there's no actus reus in the offense of 1519. 1519 talks about concealing destruction of a record. It's the case where the Supreme Court in Yates said it has to be — the statute has to be construed narrowly. Right? And in this case, what the prosecution's theory is, anybody who has knowledge, a bystander, and fails to volunteer it satisfies the actus reus of the offense. And that theory, I think, is wrong, and that's why on your second count, perhaps you've got a better defense. But on the first one, there's an affirmative misrepresentation, which is that I'm a volunteer. I don't think there was necessarily an affirmative. I don't think the campaign's really asked. I mean, I think that the easiest campaign — Isn't there evidence that he said, I don't have to report if I'm a volunteer, right? I think that was — there was some testimony with that with the Dumanas campaign. Right. There was no testimony with that with the Filner campaign. Right. So I'm focusing on the first campaign. As to that, why hasn't the offense been established? The offense — I think what it requires is more is a preexisting duty to convey the information. I think, as the amicus brief clearly stated here, the framework of 1519 only applies to concealing, destruction, and so forth and so on, false reports, and a failure to report if there's a duty to report. And I would say that Asano, Asano's wife, Mr. Singh, Singh's employees, nobody had a duty to report. Anybody who heard about this in the hallway didn't have a duty to report. The actus res is written completely out of the statute. Your Honor, let me ask you this. Let's assume for a minute that the lower Bryan standard for willfulness applies in a 2B liability. Do you agree that the government in that setting provided sufficient evidence to show that he willfully caused the campaign to file inaccurate reports? Not at all, Your Honor. And that he was volunteering. Not at all. And we would rely on the Third Circuit case in Curran for that, because the Third Circuit clearly said that you have to show specific intent, as the statute requires. So specific intent. You have to instruct the jury that the individuals had knowledge of reporting requirements and intended those reporting requirements to be evaded. That was denied by the court below, and therefore, the jury had nothing to go on in terms of a specific intent in order to convict any of the defendants before him. But that also applies in your mind if Section 2B is included in the ---- And that is the current case, Your Honor. The Third Circuit case relied upon was the 2B case. And there's a reason for that. If you want to ---- we believe that in order to cause someone to make a file of false return, you have to direct and compel them to do that. We did nothing, right? But even if you ---- that cause is construed that way, you have to have the specific knowledge, and the jury must be instructed with the specific knowledge that there are reporting requirements, and those reporting requirements, therefore, must be filed. I see that my time is up. If you want to ---- Your Honor, I'll be happy to talk about the constitutional issues later. Okay. May it please the Court, Charles Savilla, on behalf of Appellant Hasano. Since I've spent a good deal of my briefing on the ineffective assistance of counsel argument, I'd like to address that here. Counsel, you know this is a direct appeal, right? I do know it. So why are we arguing IAC on a direct appeal? Well, this Court has said that usually that's a matter that should be handled with 2255. However, there are exceptions. In fact ---- Very rare exceptions. Rare exceptions. However, this is the rare case. How ---- I would say that, at least in my experience, I've never seen a defense attorney get up and tell the jury that his client's a bad guy. They're not going to like him. He doesn't like him. Make racial comments about his appearance. Have him stand up like an exhibit, which the government appropriately objected. Counsel, you're entitled to argue whatever case you want, but I would simply ask you, is the IAC claim in direct appeal your best argument? Is that what you want us to focus on? It's an argument I want to make and try to persuade you. Okay. I would say the Frazer case, which I've cited, which is a presumptive prejudice case where racial disparities are stated by the defense attorney toward his client, this Court said that's presumptively prejudicial. Now, in that case, it wasn't in the record. The defendant made a statement that outside the record, the defense attorney made a racial disparity ---- disparaging comment toward him, and the Court said, if proven, that's presumptively prejudicial. In this case, it's in the record from the get-go of the case. And so I don't think a jury hearing that the defense attorney doesn't like his own client tells the jury they're not going to like the client, makes these racial aspersions about him. I don't want to defend what the defense attorney did in this case. One reason that we do this on 2255 is you get to make a record. You don't get to make a record here, so we only have to look at it on the ---- we have to conclude on the face of the representation that it was so deficient. So let me make excuses for the attorney not believing them. He said, look, this is a case in which a Mexican national is charged with trying to influence local elections. And so I want to draw the sting. I want to say, yeah, he's a Mexican national. He shouldn't be involved here. He's not a likable guy, but he didn't commit this offense, and let me tell you why. Pretty bad strategy, I think. But why is it so clear on appeal that we ought to reverse on that? Because he added in this 10-, 20-page opening statement, you may want to find him guilty because of what he looks like. I don't like him. He's a bad guy. Now, do your job. And his final ---- Scalia, he did ---- he also said, but you shouldn't find him guilty because ---- Scalia, yeah, he said ---- Scalia, because the evidence doesn't support it. Scalia, we've got to connect the dots. Scalia, to be fair. So that's my point. I mean, you've got ---- this is a case in which your client's nationality is part of the charge. And so the lawyer, I think, made a terrible strategic decision, but he made it, that what I'm going to do is draw the sting on that. He's a foreign national. He looks like a foreign national. He's not that likable a guy, but that's not your job here. Your job here is to look at the evidence. That may have been ineffective assistance of counsel, but I'm not sure that it's so ineffective on the face of it that we should deal with it on direct appeal. In other words, you'd ---- maybe you'd rather we deal with it on a 2255, because if we turn it down on direct appeal, then you don't have a 2255. Well, if the Court is not going to accept the argument that this is, per se, ineffective assistance of counsel to make these types of comments about your own client, including gratuitously bringing out that he's been investigated for tax fraud, extortionist, issues that he got excluded in a pretrial order, then he gratuitously brings them out for the jury in opening statement that he's a bad guy. There are other issues that the Court is familiar with that I've outlined about why this case should be reversed. This trial took place and ended in September of 2016. And as Emerson said, time turns the shining ether, the solid angularity of fact. So now if this case is relegated to a 2255, we could be three years beyond the pale. The government will argue that the defense attorney has a ---- we have a presumption of reasonable conduct. And they're going to have that going for them. So if Mr. Wynn comes in at a 2255 and says, well, I don't recall, this is three years ago, I don't recall, they're going to be ---- I want to be fair to you. Here's my difficulty in the 2255. It's finding on direct appeal that counsel's inefficient performance, even if we accepted it was, that there's a reasonable probability that the judgment would have been different. And that's a difficult thing on this record. And so that's why I wonder whether or not you're not better off with a 2255. But you're the defense lawyer. Scalia. Thank you. And I would say in answer to that question about the remedy, if the Court isn't willing to accept a prejudicial error per se in this case, then I would ask that it remand it within the context of this appeal, not relegate the defendant to a discretionary 2255 petition. That's been done in other cases which I've cited, which I think would have been Brown, U.S. v. Brown, the Second Circuit case that this Court adopted in Steele, as well as Alfeer, Aheen, which I've also cited. Those were remands. Actually, Alfeer was prejudicial per se on appeal, because he declined to accept the materiality instruction, which was an element of the offense. But I would ask that the Court remand it then for a hearing on the motion for new trial, not relegate him to a 2255. Can we change the subject for a minute? Yes. I'm very interested in your later argument. And so I'd like you to tell me what's your best argument and your best case for why the Second Amendment has historically applied to individuals such as your client with the temporary visitors admitted under a B-1, B-2 visa? Well, I have a number of arguments on that. We have the exception, the exception for visa holders to come into the country and have possessed a gun for sporting or amusement purposes. Right, you're not claiming this, that on this case, right? I'm claiming that under the terms of that statute, anybody who came into the country and possessed a gun has a defense that I had it for amusement purposes, as the regulation permits. But isn't that a defense you have to present? Well, the defense tried to present that, but it was denied. No, but you're claiming you have a Second Amendment right. That's a separate question. That's a separate question. Separate question from whether you can defend on the exemption. The exemption defense is there. The vagueness defense is also there. The court said in ruling on the exemption defense, well, it's not black and white. Well, if it's not black and white for a district court judge, it's certainly not going to be black and white for a visa holder who's in the country. And that's- What's your best case for the argument that your client, given his visa status, has Heller rights? He's been coming into this country at least for 20 years. The visa is attached to my reply brief excerpts. And it's a very detailed questionnaire. Hasn't got one word saying anything about a prohibition on the possession of a gun by a visa holder. Counsel, perhaps I didn't say it clearly enough. What's the case that you're relying on? I'm relying on United States v. Torres, which this court went through the analysis on somebody who's undocumented. And that court expressly found that there was no Second Amendment right in the facts of that case, right? For a person who is illegally here. Okay, so you're saying basically that the negative pregnant of Torres is your client? Well, I went through the analysis of Torres, and I think that it's favorable for the defendant in this case. I would add that, as the government has conceded, there is no court of appeal case that's addressed this issue. So- Asking us to make new law. This court gets the privilege of making some new law. I know you want to save a minute, but I'm confused a little bit about the gun issue. Put aside any Second Amendment right for a second. On the visa that your client had, which was a visitor's visa, he could possess a gun for sporting purposes, in your view? Yes. And you wanted to argue that he had the gun for sporting purposes? Yes. And the judge refused to give a jury an instruction to that? Is that your contention? See, I don't find that in your briefing, and that's what I'm having difficulty. I hear a different argument today than your briefing makes. Well, my argument in the brief is that the exemption is there. What is it that says, there is, as the record shows, that there's no questionnaire at the border. There's nothing in the visa. Questionnaires. Put aside due process prior notice. I'm just trying to figure out what your argument is on this. And it seems to be a different one than it was in your briefs. In other words, you now seem to be saying I was prevented from demonstrating that my client fell within the exemption. Did you make that argument in your briefs? I don't believe I made the argument as the court has articulated. I did make the exemption argument, however, that because he's got the exemption, there's no evidence that he didn't possess it for an amusement or other reason. That, in my mind, turns on whose burden it is to show that you qualify for the exemption. I just want to make sure I'm not misunderstanding, didn't misread your brief. Well, this is a criminal case. I understand it's a criminal case. And it's an element of the offense. Okay, but you're doing what Judge Smith talked about before. You're answering the questions before I ask them, and therefore, the answers aren't particularly helpful. So let me ask it again. You do not argue in your briefs that the court erred by not giving an instruction to the jury that a defense to this was that he was possessing the exemption? I did not. Okay, that's all I wanted to know. Okay, and then for defense counsel, we're going to give each of you one minute of rebuttal after the government completes its case, okay? We asked some questions that took you a little beyond there, so good morning. Good morning, Your Honors, and may it please the Court. I'm Helen Hong on behalf of the United States. I'll start with the jury instructions as they related to the 30121 count in woefulness, which is a point that Mr. Cramp led with. The jury instructions here, particularly as they related to Mr. Singh, did require the jury to find that Mr. Singh knew that Mr. Ozono was a foreign national. Well, the jury wasn't instructed that they had to find that he knew, was they? Were they? The jury instructions as a whole conveyed that requirement. Okay, so the answer to my question is no, they weren't. There was no express element that required the jury to conclude separately that Mr. Singh knew that he was a foreign national. Do you agree that an element of the offense is that he know? Yes. Everyone at trial. So why oppose an instruction that restates an element of the offense? I don't know. I mean, it may turn out in the end to be harmless error, as you say, but I don't understand the government, and it wasn't you. It was me, actually, Your Honor. I understand. It was me, Your Honor. It was you, okay. I was a child. Okay. Why oppose an instruction? Why oppose an instruction that's an element of the offense? That's why. Now we have this complicated argument about whether they fit all together, but it's an element of the offense. And, you know, I think we pointed out at SCR 4629 that below, and it was me arguing this, that everyone understood that what would be required as a result of the willfulness requirement is that Mr. Singh willfully violated the foreign national tradition. I understand all those arguments, and maybe the case doesn't turn on it. The other side said to the judge, please give an instruction that says one of the elements of the offense is that Mr. Singh must know that Mr. Rossano is a foreign national. We all agree that's an element of the offense. And the government, you, for whatever reason, says, Judge, you don't have to give that instruction. Other stuff covers it. And now we're here fighting about that. And looking back, certainly, especially given the context of the case, I certainly wish I had not fought it at this point. But at the time... Does it matter because this involves an element? There are lots of things that maybe don't matter very much, but everybody agrees that that was a key element of the crime. You have to prove it beyond a reasonable doubt. If it was an error, was it a structural error? No. Nader v. United States, the Supreme Court concluded that even with jury instruction errors where an element is omitted from the jury instructions, it's still subject to harmless error analysis. So why is it harmless here? They say what our only defense on this count was we didn't know. And I think... May not have been a great defense, but why was it harmless beyond a reasonable doubt? And I guess I would start with our position, which is that there was an error because the jury instructions as a whole conveyed that requirement. But if you don't accept that, I think the same argument goes to show why it was harmless beyond a reasonable doubt. The jury was required to find that the defendant, and this is at 1 E.R. 62. These are the jury instructions for Mr. Singh specifically that required the jury to find, in a way that tracked the Ninth Circuit model instructions, as well as this Court's precedence in United States v. Whitmore, the Supreme Court's requirements in Bryan, as well as the Eighth Circuit's recent decision in Benton, that Mr. Singh was required to have been found to have acted willfully. And what the jury instructions required was that the defendant acted with the intent to facilitate the crime of making donations and contributions of a foreign national. And I think this goes to the point that was raised earlier, which is the crime was previously defined. And my concern with that, it may be sufficient. My concern with that is, as lawyers, all of us in the courtroom can read all that stuff and put it together. But since their critical defense was knowledge, the only defense, I take it, on that count was knowledge, because there's no doubt that a foreign national made their contributions, would a jury necessarily understand that? In the context of this case, yes. That was principally all that Mr. Singh's trial counsel argued. And we outline the 14 pages of closing argument, where Mr. Singh's attorney essentially told the jury, if you agree that Mr. Singh did not know that Mr. Arzano was a foreign national, then insofar as Ravi Singh is concerned on the donation by foreign national issues, you can stop. You're done. That's what defense counsel said. Did the government say, we agree? The United States agreed by rebutting it with all of the facts that showed that Mr. Singh had to know. That's an agreeable implication. But the government didn't cure any problem by saying to the jury, he's right. We've got to show that he knew, and we can. And I would go back to the instructions again. And the jury was instructed to find that the defendant acted with the knowledge and intention of helping Mr. Arzano to commit the crime of making donations and contributions to the foreign national. And where in the instructions is the crime defined or the element that we're talking about was included? The instructions for the crime that Mr. Arzano as a principal was charged with is set forth at 1 ER 60 and 1 ER 61. But does the jury instruction expressly state that one of the elements of the crime was that he would be a foreign national? Yes, Your Honor. It does. But I want to go back to that instruction. It says, the evidence must show beyond a reasonable doubt that Singh, that wasn't in the instruction, but acted with the knowledge and intention of helping him to commit the crime. Does that tell him, does that say, I mean, I'm not sure that tells me that Mr. Singh must know he's a foreign national, as opposed to that he acted to help him, acted with, willfully helped him. And I would point the Court to the next paragraph on that same page, 1 ER 63, which provides the jury with an instruction of what it means to intend to facilitate the crime. The jury was instructed that a defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advanced knowledge of the crime and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime. That instruction required the jury to conclude that Mr. Singh knew that Mr. Arzano was going to engage in the crime of providing donations and contributions in connection with a local election, which was prohibited because he's a foreign national. Did the closing instruction, closing argument that you made include any reference to the fact that the jury needed to find that Mr. Arzano was a foreign national and that Mr. Singh knew that? Yes, Your Honor. That was the principal argument that Mr. Singh made in closing argument, and that's at SCR 591 through 5964. And the United States, in rebuttal, provided the jury with all the facts that showed that Mr. Singh did know, and that's at SCR 4980. He knew Mr. Arzano was a foreign national, and he knew Mr. Arzano was paying for his work. In the context of this case, and again, in hindsight, understanding the legal arguments that are being raised now, I certainly regret having sort of contested and opposed, but at the time, what we were really focused on was the definition of willfully, and whether the definition of willfully that tracked Bryan and that tracked this Court's precedence in the United States Whitmore should have been changed and altered. And our position below was, we already know what the Supreme Court has blessed. We already know what the Ninth Circuit has blessed. Let's go with that. And in light of that, as well as instructions in this case, in the context of the evidence that was introduced at trial, we think that the jury instructions here at 1 ER 62 and 63 were adequate to apprise the jury of its requirements for finding all elements. But even if it were not, it was harmless beyond a reasonable doubt for the reasons we identified. Roberts. Could you address the argument that I think Mr. Krent made in his brief, but didn't address today, as to the constitutional issue, not the First Amendment issue, but whether under the naturalization clause, Congress could criminalize the... Sure, Your Honor. And Congress was well within its authority as an aspect of its broad power over immigration and naturalization, as well as its inherent attributes of sovereignty to prohibit foreign nationals from contributing in even local elections. The language in Blumen, as well as all of the language in the Supreme Court cases that Blumen relies on, recognizes that there is a sovereign right at political self-definition. And what Congress has done here is no different than what it does in connection with visas it issues every day. So, for example, we know with a V1, V2 visa that Congress can legitimately prohibit entrance on those visas from working here, from living here, possessing firearms here, in the same way Congress had the authority to prohibit visa holders from contributing in connection with local elections. But those things that you just mentioned are a little different than local elections. There is case law, you know, that makes it very clear that the Constitution gives power, for the most part, almost plenary power, to the states to regulate their own election situations, with some exceptions. Why does it have the power to regulate contributions to local elections? We get it on the federal level, but this is a local election in the city of San Diego. Why is that a legitimate power of the federal government? Because it's within United States borders, Your Honor. But basically, anything that the Congress of the United States wants to do in regulating local elections anywhere within the continental United States or outside the continental United States, it's part of our territory. That's okay? As it relates to foreign visitors. Yes, Your Honor. So Congress's authority is not limited. We certainly don't believe that Congress has the authority to dictate, and we know this from Oregon versus Mitchell, we know this from a line of Supreme Court cases, to dictate what local communities can do vis-a-vis citizens, as well as people who are here lawfully. What about people who just organize themselves? There are some communities in California that aren't even organized cities. They have CC&Rs and they're run by homeowners associations. They choose not to incorporate. Would Congress have the right to regulate the ability of foreign nationals to contribute to those? The definition of self-governance has been sort of explicated through a number of cases that we went through, like Ombok, Cabell. I think that, to the extent it's a city, yes, would be the sort of the self-governance that the Supreme Court has identified as uniquely within the power of government. To the extent that a locality determined that it wanted to allow foreign nationals to control its city, Congress has the authority within its power in regulating and establishing a uniform role of naturalization to prohibit those foreign nationals from participating. Is there anything that Congress can't do when admitting an alien? In other words, can they say, you can come in, but you must stand on your head every day? I mean, what's the limits of their power? There are other constitutional limits. And so if Congress were to pass a law that would facially violate another constitutional provision. Well, but here his argument is, once admitted, I have First Amendment rights. Nobody doubts that. I can speak. I can say things. Could they admit him only if he doesn't criticize President Trump? No, not in terms of his public speaking. And that's what Blumen recognizes. Now the Supreme Court, for whatever reason, has over time said that giving money is First Amendment expression. So we now have somebody who wants to engage in First Amendment expression when he comes in and the U.S. says, you may not. What is that power? What Blumen recognizes is there's a difference between speech and speech that is participation in the process of self-governance, right? That's exactly what Blumen looked at. There is speech that may be participation in self-governance that the United States and states as sovereigns can prohibit and prevent because those individuals are not part of this national community. There's no doubt that an individual somewhere in Canada could claim that they have some right to participate in the United States elections, whether at the federal, state, or local level. In the same way, Mr. Ozano could not claim a constitutional right to participate in any aspect of self-governance. Laws that prohibit him from becoming a probation officer, a police officer, even a teacher have been upheld as activities related to self-governance. In this instance, Congress, within its broad powers to determine who it grants the privilege to enter the United States, did not cede its ability to say, but you can't participate in activities of self-governance. And that's exactly what Congress did in this situation. No different than the prohibition on doing work here. No different than the prohibition on residing here permanently. A state could not say, I know the United States federal government told you you could only come temporarily. We're giving you permanent residence here as a member of, you know, the state of California because that's an aspect of the federal government's broad power with respect to naturalization. So is there, there's a difference then between, I guess what I hear you saying is that there's something special about this particular offense that, you know, allows it to be swept within the immigration and naturalization power? Because otherwise, I guess what I'm wondering about, why couldn't Congress, as a condition of granting someone a visa, basically make criminal all sorts of other things that they would be lawfully permitted to do as citizens, not related to elections per se, but just all sorts of other stuff, kind of as Judge Hurwitz alluded to. Is there a limiting principle there? Is your? I mean, I would say it is criminal for individuals who come here unlawfully, for example, to work here, right? There's, there's... Let me back up. Oh. So the conduct that Mr. Ezzano engaged in here would certainly be lawful. In fact, constitutionally, he'd have a constitutional right to engage in it if you were a citizen, right? Correct. So I'm just saying your position, it sounds like to me, is saying, well, any of the other 10 million things that citizens could do lawfully here, it sounds like your view would be that if Congress felt like it, it could basically criminalize that if it were engaged in by someone who wasn't here as a citizen. To the extent that there are no other constitutional limits on what Congress can do. In this instance, as it relates to participation in activities of self-governance, there are no other constitutional restrictions. The United States could not say you're entered, you have the privilege to come into the United States, but you give up all of your other constitutional rights. We know from Supreme Court precedent, for example, that illegal aliens have First Amendment rights. Yeah, yeah. No. But I'm just saying, so if Congress just decided every single criminal offense that state and local governments criminalize, every single criminal offense committed by someone who's not a citizen, we're just going to make it a federal offense, and we will sort of take over the prosecution of all that. Your view, that'd be fine. That's within Congress's immigration. Authority to do. That's what I'm considering. Your argument has focused, I think, persuasively on the self-governance aspect, but it doesn't seem to me that that's necessarily a limiting principle that would, if you kind of extend out your argument to its fullest, it would be Congress could just say, state and local governments, we're taking you out of the business of prosecuting just run-of-the-mill crimes as long as they're committed by noncitizens, because that's within our domain. And you would say that that's okay, I guess? What those constitutional limits may be, you know, I think you can see them. Well, let's assume that there's not a constitutional problem. Let's assume that jaywalking, that Congress passes a statute that says any alien who jaywalks is punishable by, it's punishable as a felony. Nobody has a constitutional right to jaywalk, but that's, as Judge Watford points out, typically the province of local government is, I take it your argument is they could do that. No, Your Honor, I mean, I guess the limitation here is different, and the limitation, the reason it's different is because sovereigns have the inherent right and power essential to self-preservation to forbid the entrance of foreigners. So then your answer to Judge Watford's question is that, yes, it is because it's about elections. It's not just because of the power, not the alien immigration power in general. It's about the specific application of it. It's about self-governance. It's about the sovereign's power to define who is part of us and not us. What the United States has the inherent authority to do is determine what individuals who are part of us can participate in when it comes to the self-definition process of governance. This is pretty deep stuff. Are you, in some way, tying it to the requirement that Congress is supposed to ensure that the states have a republican form of government, the small r? Is that it? Is there a necessary and proper element of that, that there's something special about elections? Because otherwise, the questions that my colleagues have asked you, they're not capped in any way. Right. Why wouldn't Jay Walking be punishable as a felony if that's what Congress decided to do? I would say that I do think that the guarantee to establish a uniform rule of naturalization as well as the guarantee to every state to a republican form of government, all of those presuppose an us versus them. And that presupposition of us versus them gives Congress the power to determine what people who are us can do versus what individuals who they give privileges to enter the United States may not do. And that's all that Congress did here. As a condition, if it were simply a condition of Mr. Zano's visa, for example, and he were told specifically when he entered as part of that visa, you may not contribute in any local election. I don't think there's any question that Congress could do that as part of its powers in determining So your position is they did it uniformly? If they did it uniformly? Your position is they did it uniformly rather than stamp it on every visa? Yes, exactly. Instead of doing it visa by visa, Congress took that power and made all foreign nationals prohibited, the prohibition on all foreign nationals apply to all local, state, and federal elections. I know Judge Smith wants to keep us to time limits, and I appreciate it, but I need to ask you about the 15-19 count because you deserve a chance to defend yourself on it. So tell me how Mr. Singh caused the filing of a false return with respect to the campaign where he said to them, somebody's paying me for this. I'll start factually with what we know from the Dumanis campaign that was in Mr. Singh's head by the time that August, September, and October all the way around. I'm only talking about the second one. Just the campaign where he, in effect, told the campaign, somebody's paying me. How did he cause them to file a false return? I think a predicate conversation with Jennifer Tierney sets the context for it, and so I'll start there. And that's at SDR 1400 to 1401. What Ms. Tierney testified to, she was the campaign manager for Ms. Dumanis, was that no one could, that she told Mr. Singh that no one could pay someone to volunteer in a campaign, that if any payments were made, those would have to be reported to the campaign. Let me cut you short because I don't want to use it, but we all know that contributors have no obligation to make reports. It's the campaign that has to make an obligation to report. This stuff shows me that the campaign manager was well aware that all contributions paid for had to be reported. Mr. Singh, with respect to this campaign, says to the campaign, this is not a pro bono effort. Somebody's paying for it. He didn't misrepresent who or anything else, and they didn't put it on the return. How did, just proximate causation, how did he cause them to leave out that contribution under return? I understood, Your Honor. With respect to the Filner campaign, what he had was a conspirator in Mr. Clancy. What Mr. Clancy testified to as the campaign manager on behalf of Mr. Filner was originally Mr. Singh came in and said, it's taken care of, don't worry about it. And then ultimately later learned during the course of the work that Mr. Singh did that through another employee that Mr. Rossano was financing Mr. Singh's work, but all of that presupposed, the understanding, the fact that he had found another conspirator within the Filner campaign didn't change Mr. Singh's liability under 1519 for having caused the campaign, whether through complicitness or not, to have misreported information on the Form 460 representing that Mr. Singh had not received payment and an in-kind donation by a foreign national had been made to the Filner campaign. Well, I'm not sure that's even Paul's graph causation, let alone criminal causation. But I understand your argument. Any other questions, Paula? Thank you very much. Thank you, Your Honor. Now, we each have one minute, so watch the clock. There is a trap door right below. All right. So with 20 seconds to say there is the conspiracy count, I think there's clear error in the conspiracy count, which you can read for yourselves. With respect to 1519, I think the Marinello Supreme Court case is important because they instructed in the Supreme Court you have to have an investigation contemplated and there was no testimony about any kind of contemplation of any investigation. So finally, it's my last, in terms of the constitutional issue. I think what they've forgotten about is federalism. All those cases stand for the fact that it's up to the state and local government to decide who votes, who can contribute. How ironic that we're here in San Francisco, which has given vote to non-citizens in school board elections, and the argument from the government is, oh, yeah, that's We could overrule that at any time because we have total control of who can participate in governance and in terms of voting, in terms of contributions. And at the same time, if you can talk about elections when you're here lawfully, if you can write about elections, if you can demonstrate about elections, like across the street, why can you not contribute to elections? Particularly because the interest with respect to the federal government in local elections must be much lower than it is with respect to federal elections. What about, okay, I'll stop. No, no, no, no, no. Judgment? Judgment. The trap door was about to open. Judges can do it. But why wouldn't the national government have a concern if, even at the local level, if it were viewed that foreign governments, maybe acting on behalf, with individuals acting on behalf of foreign governments, were obtaining leverage control at the local level? That seems to me an interest that the national government would still have, right? There is some theoretical interest. I think it's patronizing. California has laws against foreign national participation in some respect. Indeed, they have laws that are more extensive than congressional laws in some respect. So I don't think there's really a need. And at the same time, there is this tradition of local control over elections. And foreign nationals voted for hundreds of years in our states and local governments. And so the interest is simply not weighty. And particularly when there's a vibrant First Amendment stakes of someone who's married to a citizen, pays taxes, works in the district, it seems like it's an easy case, Your Honor. Thank you. Very well. In answer to Judge Hurwitz's questions concerning what was the request of the appellant concerning the firearms exemption that's discussed at page 58 of my brief, they asked for dismissal because the exemption allowed the First Amendment. Right. I understood that. I thought you were making an argument that I was denied an instruction. I didn't find that in your brief. Second, I find it ironic that the government is arguing Blumen for the First Amendment argument but does not accept Blumen for the argument about the intent to commit these donation offenses, which we've briefed. That is that the last two paragraphs of Blumen talk about the fact that most foreign nationals are strangers in a strange land here, and they must know. The government must prove they know it's against the law for them to donate. Those are the last words of Judge — now Justice Kavanaugh's opinion in Blumen. So if it is binding on the First Amendment, as the government says, it ought to be binding on what the element is for the foreign donation contributions, which we've argued in our briefs. Mr. Chief, either of my colleagues has additional questions. All right. Thanks to you all for your argument. Thank you. It's an interesting and difficult case. The case just argued is submitted.
judges: M. Smith, Watford, Hurwitz